**Clark BYERS, Plaintiff-Appellant,**

v.

**MIDDLE TENNESSEE ELECTRIC MEMBERSHIP CORPORATION, Defendant-Appellee.**

No. 72–1100.

United States Court of Appeals, Sixth Circuit.

Sept. 28, 1972.

Charles S. Coffey, Jr., Chattanooga, Tenn., for plaintiff-appellant; Coffey, Summitt & O'Neal, Wilkes T. Thrasher, Jr., Chattanooga, Tenn., on brief.

Thomas O. H. Smith, Jr., Nashville, Tenn., for defendant-appellee; Smith & Smith, Nashville, Tenn., on brief.

Before PECK and MILLER, Circuit Judges, and McALLISTER, Senior Circuit Judge.

JOHN W. PECK, Circuit Judge.

This is a personal injury action arising out of an accident in which the plaintiff-appellant was struck by an arc from the power lines of the defendant-appellee as he was working on a roadside billboard sign. The jury in the trial court found the defendant guilty of negligence for the improper maintenance of its lines, but found Byers guilty of contributory negligence in failing to exercise proper care for his own safety. In Tennessee such contributory negligence is a complete bar to recovery. The sole issue on appeal is whether the District Court erred in refusing to charge the jury on the question of willful, wanton or gross negligence on the part of the defendant utility. Jurisdiction is based on diversity of citizenship and the law of Tennessee is controlling.

Whether or not a defendant's conduct rises to the level of willful, wanton or gross negligence turns upon the facts of each case. Inter-City Trucking Co. v. Daniels, 181 Tenn. 126, 132, 178 S.W.2d 756, 758 (1944). In this case, the billboard was located in a rural area along a U.S. highway seven miles outside of Murfesboro, Tennessee. It had been erected six years prior to the accident and was placed so that it infringed some eleven feet onto a right of way granted to the defendant for its lines.[1]

On the day of the accident, July 11, 1968, plaintiff and a helper went out to repaint the sign and noticed the paint was peeling in the upper left-hand portion of the sign. Plaintiff then climbed a ladder and while he was scraping the paint, the lines, which were hanging so that they passed within twenty inches of

---

1. Upon being named a defendant in this case, the Middle Tennessee Electric Membership Corporation filed a third party action against Rock City Gardens, Inc., the owners of the sign in question, alleging that it had negligently constructed the billboard sign on the defendant's right of way. However, the third party complaint was dismissed on the ground that Rock City Gardens, Inc., had fulfilled its obligation to Byers by paying the required amounts under the Tennessee Workmen's Compensation law.

the sign, arced to his body, resulting in burns and other disabling injuries.

Plaintiff had thirty-two years experience in working on billboard signs and had worked on this particular sign on previous occasions. He testified that he had repainted the sign the year before the accident but had not noticed the wires at that time, even though there was nothing in the area to obscure his vision. He stated that it was his practice to be alert for any dangerous conditions.

The defendant admitted at trial that the lines were hanging too close to the billboard in violation of the standards of the National Electric Safety Code. The wires were twenty inches from the sign, although the Code requires a clearance of at least eight feet from such structures. However, the defendant was never notified of the dangerous condition nor was it notified that work would be done near its lines. Moreover, it had never been notified nor was it aware that the sign infringed onto its right of way. In this regard, it is important to bear in mind that at the time of the construction of the sign, and the consequent infringement, the wires had been in place for many years. The record does not suggest that any additional "sagging" occurred after such construction of the sign, nor that there was thereafter any increased proximity between wires and sign for any reason. Plaintiff does not contend that the record established any actual knowledge on the part of the company even as to the existence of the sign, and it becomes necessary to determine whether evidence of constructive knowledge was presented.

■ The company did not have a policy of regular inspection of its lines in the vicinity of this particular sign. Rather, for the area more than three to four miles from Murfeesboro, the company depended upon tree trimmers who were directed to inspect the lines whenever they went out to cut trees. Otherwise, the company depended upon any of its other personnel, such as meter readers, to report any violations or dangerous situations they might see. There was an illuminated billboard located near the sign in question with a meter which was read by a company employee every two months, but no safety violations were ever reported to the company, and we conclude that the evidence does not establish constructive knowledge on its part as a matter of law.

■ The Supreme Court of Tennessee has stated:

"[A] satisfactory definition of gross negligence [is]: 'Such entire want of care as would raise a presumption of a conscious indifference to consequences.' This, of course, means more than, on the one hand, a want of ordinary care—a common definition of negligence. And yet, it does not cross the border line of studied or deliberate interest to do the specific injury. The mental attitude is one of indifference to injurious consequences, conscious recklessness of the rights of others. Such conduct may well be characterized as wanton. Bouvier defines wanton negligence as: 'A heedless and reckless disregard for another's rights, with the consciousness that the act or omission to act may result in injury to another.' (Citation omitted.)"

Craig v. Stegner, 159 Tenn. 511, 517, 19 S.W.2d 234, 236 (1929). We find no evidence of "conscious recklessness" by the company in this case. Instead, the sole jury question presented is whether defendant was guilty of ordinary negligence in failing to properly maintain its wires and to discover and take precautions against a dangerous condition. *See* Town of Clifton v. Davis, 27 Tenn. App. 29, 177 S.W.2d 848 (1943).

■ Plaintiff relies upon a recent Tennessee Court of Appeals decision, Phelps v. Magnavox Company of Tennessee, 466 S.W.2d 226 (1970), to argue that an instruction on gross negligence should have been given herein. In *Phelps*, a workman was engaged in laying a roof on a new building and was electrocuted when a mop handle he was using came in contact with electrical wires owned by the defendant Johnson

City Power Company. The court of appeals stated that the trial court could properly have found the power company guilty of gross negligence in failing to maintain its wires a safe distance from the building. However, there, a representative of the power company visited the construction site for the new building and agreed upon the location of the wires in relation to the new building. Thus, the power company had actual knowledge that the work was being done near its wires but failed to take proper steps to remedy the situation. There is a clear distinction between the case in which one is actually aware of a potentially dangerous condition and then neglects to properly care for the safety of others and this case in which neither actual nor constructive knowledge of the dangerous condition was shown. The failure to discover and repair dangerous conditions in poles and wires normally presents a jury question on the issue of ordinary negligence in Tennessee, (*See* Tennessee Electric Power Co. v. Hanson, 18 Tenn.App. 542, 79 S.W.2d 818, 820–821 (1934)), and the District Court properly charged on this issue.

The judgment of the District Court is affirmed.