Douglas W. THOMASON, Administrator of the Estate of Douglas W. Thomason, Jr.

v.

WAYNE COUNTY, Tennessee and Clifford Hancock, County Road Superintendent, and Clifford Hancock, Individually.

Court of Appeals of Tennessee, Middle Section, at Nashville.

Oct. 3, 1980.

Certiorari Denied by Supreme Court Feb. 2, 1981.

Tom W. Moore, Jr., Cain & Moore, Columbia, for plaintiff-appellant.

George G. Gray, Charles Jeffrey Barnett, Waynesboro, for defendants-appellees.

## OPINION

BEN H. CANTRELL, Special Judge.

In this death action involving a question of the liability of Wayne County based on negligence, nuisance and strict liability, the Trial Court held the County guilty of ordinary negligence but dismissed the action because of the contributory negligence of the decedent.

The decedent, Douglas W. Thomason, Jr., was killed in an accident on March 30, 1977 on Iron City Road, a crooked two-lane paved highway maintained by the Wayne County Highway Department. At the place of the accident the highway curves to the right on the side of a hill passing above a steep bank where the hill falls off to the left. A guard rail had been placed along the left side of the road to protect against automobiles leaving the road and falling down the embankment. The rail starts just about where the road begins to curve to the right and continues until the road crosses over the deepest part of the fill. Originally the guard rail was constructed out of thin steel plate that had been shaped into a modified "W" section approximately ten inches high. These sections were flanged at the ends and bolted to the posts to form a continuous ribbon of guard rail mounted on steel "H" beams set in concrete. As constructed the rail's purpose was to sustain an impact from an automobile, deflect from four to eight feet without yielding and direct the automobile around the curve keeping it from leaving the roadway and falling down the embankment.

Sometime prior to the date of the accident in question other accidents had occurred at this location and a large portion of the "W" section had been damaged. The Wayne County Highway Department removed the damaged "W" section from about the center of the rail where the bank was the deepest to the far end and replaced it with steel angle iron tack welded to the tops of the posts. Where the individual angle iron pieces met they were lapped a

few inches and spot welded together. So on the date of the fatal accident the first part of approximately two hundred feet of the guard rail was constructed of "W" section and the balance was angle iron welded to the top of the posts.

On March 30, 1977 Douglas W. Thomason, Jr., and Patricia Ann Regan were traveling in an easterly direction on Iron City Road at approximately 10:00 p. m. They had been to a place called "Johnny's" to visit with some of Mr. Thomason's friends who played in the band there. While visiting with the friends they each had a drink of Bourbon mixed with orange juice. After the accident the partially filled bottle of Bourbon and some empty beer cans were found in the car.

After leaving the tavern Mr. Thomason and Miss Regan started back along the route on the Iron City Highway from which they had come. At the site of the fatal crash Mr. Thomason somehow lost control of the car and skidded 225 feet before hitting the guard rail at a point where the original "W" sections still existed. Apparently the rail took the impact but deflected and turned the car so that it then slid along the rail to the point where the angle iron had replaced the "W" section. At that point the "W" section had been knocked backwards so that the end of the angle iron was exposed and the car hit it head on. As the car continued its forward progress the angle iron pierced the front of the car, passed through the fire wall and into the driver. The car then traveled down the embankment and came to rest 461 feet from where it started skidding. The driver, Mr. Thomason, sustained grievous injuries and died before reaching the hospital from a laceration of the femoral artery.

From these facts the Trial Judge found that Wayne County was negligent in maintaining the guard rail in such a condition but that the proximate cause of death was the deceased's own negligence.

On this appeal the appellant contends that the negligence of the deceased does not bar this action because: (1) the County is

guilty of gross negligence, or (2) the guard rail maintained as it was constituted a nuisance, or (3) the County is liable on the basis of strict liability.

We are unable to agree with the contentions of the appellant and therefore affirm the Trial Court.

First, we are unable to conclude that the County through its Road Superintendent was guilty of gross negligence because of the way in which the guard rail was repaired. Gross negligence indicates a conscious neglect of duty or a callous indifference to consequences. *Tipton Co. v. Board of Education v. Dennis*, 561 S.W.2d 148 (Tenn.1978). In *Stagner v. Craig*, 159 Tenn. 511, 19 S.W.2d 234 (1928), gross negligence was defined as "such entire want of care as would raise a presumption of a conscious indifference to consequences."

Here the Road Superintendent was not shown to be conscious of any increased risk resulting from his repair of the guard rail. His effort was directed toward replacing the rail so as to prevent motorists from driving or hurtling down the embankment. He was attempting to minimize risk rather than being indifferent to the harm his acts might cause. The fact that an ordinarily prudent person might have foreseen a possible danger from the construction amounts to ordinary negligence and not gross or wanton negligence. The Trial Judge concluded that the County was guilty of negligence but not gross negligence and the evidence does not preponderate against that finding. Therefore the findings should not be disturbed. See T.C.A. § 27–303.

Next the appellant contends that the guard rail as it existed on the date of the fatal accident was a nuisance and any contributory negligence on the part of the decedent would not bar recovery. *Johnson v. City of Alcoa*, 24 Tenn.App. 422, 145 S.W.2d 796 (1940).

There are obvious legal hurdles that one encounters along the way to finding liability of a county (as opposed to cities and towns) for nuisance. See *Cooper v. Rutherford County*, 531 S.W.2d 783 (Tenn.1975),

and *Buckholtz v. Hamilton County*, 180 Tenn. 263, 174 S.W.2d 455 (1943). Appellant recognizes these hurdles but argues that liability for nuisance against counties is brought back to life by the enactment of the Tennessee Governmental Tort Liability Act, T.C.A. § 23–3301 et seq. However we need not reach that question because of the type of nuisance (if any) shown by the proof here. The same case cited by the appellant, *Johnson v. City of Alcoa*, supra, distinguishes absolute nuisances from those that arise as a result of negligence. The Court said 24 Tenn.App. at page 427, 145 S.W.2d 796:

"But if the nuisance grows out of and is founded upon negligence, or created by the negligent act or conduct of the creator, then contributory negligence is a valid defense."

Therefore we conclude that since the damages resulted from the negligence of the defendants, contributory negligence is a defense.

Next the appellant asserts that the defendants are liable on the basis of strict liability for which contributory negligence is no defense. *Ellithorpe v. Ford Motor Co.*, 503 S.W.2d 516 (Tenn.1973). By strict liability the appellant refers to cases where the defendant was engaged in certain ultra-hazardous activities such as storing explosives, blasting, or impounding water on land where it creates a highly dangerous situation. *Rylands v. Fletcher*, 3 Hurl. 4 C 774 (1865); L.R. 1 Ex. 265 (1866); L.R. 3 H.L. 330 (1868).

We are of the opinion that this is not such a case. Here the defendants were not storing substances or carrying on activities that are inherently dangerous. This case is one of negligence and does not fall within that class of cases.

Finally we come to the issue of the decedent's contributory negligence. The proof showed these facts: (1) The accident took place along a gradual curve capable of being negotiated at the speed limit of 55 miles per hour; (2) the decedent had been drinking and the automobile smelled of alcohol

and contained whiskey and empty beer cans; (3) skidmarks were left on the road up to the point of initial impact with the guard rail for approximately 220 feet and the car traveled a total of 461 feet before finally coming to rest; (4) an automobile skidding under test conditions for 220 feet would have been traveling at a speed of approximately 70 miles per hour and after crashing into the guard rail and plunging through the section where the angle iron had been used as a substitute the car continued for approximately 241 feet.

On this evidence the Trial Judge concluded that the decedent was guilty of contributory negligence which was the direct and proximate cause of his death. Again this finding comes to us with the presumption of correctness and we do not find that the evidence preponderates against that finding.

From all of the above we are of opinion that the decision of the Trial Judge should be affirmed. The costs of the appeal are taxed to the appellant.

AFFIRMED.

SHRIVER, P. J., and FRED GILLIAM, Special Judge, concurs.